OPINION
{¶ 1} The appellant, Stephen Bauer ("Bauer"), appeals the judgment of the Seneca County Common Pleas Court, Probate Division, appointing the appellee, James Fruth ("Fruth"), as Bauer's guardian of the person pursuant to R.C. 2111.02(A).
 {¶ 2} On December 9, 2005, Fruth filed an application for guardianship of the person of Bauer. Fruth also filed a statement of expert evaluation, completed by A. O'Leary, M.D. ("O'Leary"). Bauer was diagnosed as bipolar with "most recent episode manic with psychotic features". O'Leary also found Bauer to be mentally impaired and noted that he exhibited bizarre behavior and delusional thinking. In opining that Bauer required the aid of a guardian, O'Leary stated that Bauer is unable to care for himself and exhibits "grossly impaired judgment".
 {¶ 3} The trial court appointed an attorney and a guardian ad litem for Bauer. On January 26, 2006, the court held a hearing, but continued the matter in order for Bauer to obtain an independent psychiatric evaluation. On April 19, 2006, the trial court held a full hearing. The court heard testimony from Rachelle Needles, a counselor at Firelands Counseling; Bauer; and Rebecca Herner ("Herner"), the guardian ad litem. The trial court found a guardianship necessary by clear and convincing evidence and appointed Fruth to serve in that capacity. Bauer appeals the trial court's order and asserts the following assignment of error:
The Trial Court erred in appointing a guardian as the decisionwas against the manifest weight of the evidence.
 {¶ 4} Bauer contends the evidence does not support the appointment of a guardian, and that mental illness alone is an insufficient reason to appoint a guardian. Bauer contends he knows that the United States and Ohio have laws that he must follow, and that he knows how, and is capable of, providing for his daily needs. Finally, Bauer contends the trial court did not explore a less restrictive alternative to the guardianship. In response, Fruth contends there is clear and convincing evidence on the record to support the trial court's appointment. Fruth contends the "transcript of the guardianship hearing is robust with examples of [Bauer's] bizarre and delusional thought process." Finally, Fruth contends the trial court is required to consider any evidence of a less restrictive alternative, but the party opposing the guardianship bears the burden of proof, and in this case, Bauer did not produce any evidence for the court to consider.
 {¶ 5} A trial court is required to hold a hearing before it appoints a guardian of the person, and it must make the appointment if clear and convincing evidence supports the necessity of the appointment. R.C. 2111.02(A); (C)(1), (3).
Clear and convincing evidence is that measure or degree ofproof which will produce in the mind of the trier of facts a firmbelief or conviction as to the allegations sought to beestablished. It is intermediate, being more than a merepreponderance, but not to the extent of such certainty as isrequired beyond a reasonable doubt as in criminal cases. It doesnot mean clear and unequivocal.
 Cross v. Ledford (1954), 161 Ohio St. 469, 477,120 N.E.2d 118 (citing Merrick v. Ditzler (1915), 91 Ohio St. 256,110 N.E. 493). On review, the appellate court must determine "whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Id. (citations omitted). However, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 6} Upon review of the record, there is clear and convincing evidence to support the trial court's determination. The only psychiatric evaluation is the statement of psychiatric evaluation completed by O'Leary, filed on December 9, 2005. Although the court granted additional time for Bauer to obtain an independent evaluation, he failed to do so. Herner testified that she scheduled an evaluation for Bauer, but he chose not to go. Hearing Tr., Jun. 13, 2006, 48:18-22. Herner testified that she spoke with Bauer "a number of times" about the evaluation, but he refused the second evaluation because "he believed that Dr. Rana was in cahoots with everyone, all the other psychiatrists in town. Uh, and he believed that he had — would have prejudged him. He further believed that Dr. Rana had no power because of these codes that he had, uh, already given." Hearing Tr., at 48:23-24; 51:20-25.
 {¶ 7} The record also discloses that Bauer lives his life according to the "codes". When asked to describe what the "codes" are, Bauer stated there were "2200 pertinent codes within our Marine Corps", which are somehow related to the "Secretary General of the United Nations", and that there are "international defense codes." Hearing Tr., at 37. Bauer testified that the "codes" provide power and wealth, but when asked whether he is wealthy, he stated that he is wealthy "[i]n a manner of speaking", and when asked whether he is powerful, he stated he has "[r]espect power. Nothing but self-respect." Hearing Tr., at 38.
 {¶ 8} Bauer also referred to "codes" established by the United Nations that allow him to legally drive a motor vehicle in Ohio, even though his last driver's license was issued from Arizona in 1992, because "according to my readings on UN Resolution, says [sic] that you never have to retake the test in this or any country as long as you know the rules of the road and do not get caught for drunk driving three times or convicted of senility." Hearing Tr., at 31:18-22. Bauer referred to the "codes" as providing a "limo approach law" and the "Helsinki Defenses and things like that." Hearing Tr., at 41; 45. When he was questioned by Herner, Bauer invoked the "all judicial lineage exception rule", which his counsel translated into an objection. Hearing Tr., at 34.
 {¶ 9} The portions of the transcript produced above constitute only a fraction of the bizarre statements made by Bauer during the hearing. In his favor, the record reflects that Bauer understood he was in court, and he had dressed and groomed himself appropriately. Hearing Tr., at 24. With leading questions from his attorney, Bauer stated he is able to walk home from the courthouse; that he is able to feed himself and select food items at a restaurant; and that he always locks the door to his apartment. Hearing Tr., at 25-28. Despite this evidence, the record contains clear and convincing evidence to support the trial court's determination that Bauer's mental illness necessitated a guardian of the person.
 {¶ 10} Bauer also asserts the trial court must consider any less restrictive alternatives to appointing a guardian. At the hearing, "[e]vidence of a less restrictive alternative to guardianship may be introduced, and when introduced, shall be considered by the court[.]" R.C. 2111.02(C)(5). The clear and unambiguous language of the statute requires a trial court to consider evidence of a less restrictive alternative; however, in this case, there was no evidence presented. The evidence indicates "no known last contact" with Bauer's next of kin, his brother. Additionally, Herner testified that she had considered less restrictive alternatives, but she did not "see that there would be any others." Hearing Tr., at 50:21-22. Apparently, the only less restrictive alternative advanced by Bauer is to let him govern his own well-being by overruling the application for guardianship. Because the trial court was presented with no evidence to consider, it could not have erred by failing to do so. However, the trial court found that the guardianship "is the least restrictive alternative to meet, uhm, Mr. Bauer's needs." Hearing Tr., at 57:11-12. The sole assignment of error is overruled.
 {¶ 11} The judgment of the Seneca County Probate Court is affirmed.
Judgment Affirmed.
 Rogers and Shaw, J.J., concur.